UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW L. WHITE, | No. 2:17-cv-00494 KJM KJN |
| Petitioner, | |
| v. | FINDINGS & RECOMMENDATIONS |
| ERIC ARNOLD, Warden, | |
| Respondent. | |

I.  Introduction

Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2013 conviction for two counts of robbery and the related 2014 true findings regarding firearm enhancements.  He was ultimately sentenced to a total of forty-eight years, eight months in state prison.  Petitioner claims that: the trial court erred in admitting evidence concerning uncharged robberies; insufficient evidence of identity supports the verdicts; law enforcement witness testimony concerning the firearm used in the robberies was improper lay opinion; cumulative error occurred as to those claims; and appellate counsel provided ineffective assistance.  After careful review of the record, this court concludes that the petition should be denied.

//

//

II.  <u>Procedural History</u>

On April 16, 2013, a jury found petitioner guilty of two counts of robbery (Cal. Pen. Code, § 211); however, the jury could not reach verdicts on the related firearm enhancements. (LD 2 at 263-66, 270, 272-73 & LD 6 at 608-14.)[1]  Following retrial on the enhancements, a second jury found true petitioner's intentional discharge of a firearm and personal use of a firearm as to count one and count two (Cal. Pen. Code, §§ 12022.53(b)&(c)). (LD 2 at 452-53, 455-56, 458, 460, 462-63, 465-66; LD 7 at 922-27.)  On March 28, 2014, petitioner was sentenced to thirty-two years, eight months for the two robbery counts and the related firearm enhancements in Yolo County, and was resentenced on an earlier Sacramento County conviction to a consecutive term of sixteen years, for a total of forty-eight years and eight months in state prison.  (LD 2 at 498; LD 7 at 940-47.)

Petitioner appealed the conviction to the California Court of Appeal, Third Appellate District.  (See LD 8-10.)  After modifying the judgment to reflect a total of 2,126 days of custody credit, the Court of Appeal otherwise affirmed the judgment of conviction in its entirety on September 21, 2015.  (LD 11.)

Petitioner filed a petition for review in the California Supreme Court (LD 12), which was denied on December 16, 2015.  (LD 13.)

Petitioner filed the instant petition on March 7, 2017.  (ECF No. 1.)

III.  <u>Facts</u>[2]

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

**_August 18 Robbery_**

Just before 10:00 p.m., two men entered Bryte Way Market, a small neighborhood grocery store in West Sacramento, where owners

---

[1] "LD" refers to the documents lodged in this court by respondent on July 5, 2017.

[2]  The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. White, No. C076189, September 21, 2015, a copy of which was lodged by respondent as Lodged Document 11 on July 5, 2017.

Abdulla and Susan Fattah were working. [Fn. Omitted.] One man wore a dark blue hooded sweatshirt and the other wore a black hooded sweatshirt; both wore baseball caps underneath their hoods and wore bandanas covering their faces. The man in the blue hooded sweatshirt carried a sawed-off shotgun and directed Susan to open the cash register. She complied, and the armed man reached across the counter and took cash from the register. Susan heard a gunshot nearby behind her; when she stood up, she saw blood on the floor near where her husband had been standing. Abdulla followed the robbers out of the store; when he came back inside, blood was dripping from a gunshot wound above his wrist. When reviewing the surveillance footage of the incident later, Susan noticed the armed man had dark skin and what looked like a tattoo on his wrist. She could also tell from the assailant's voice that he was male.

### August 28 Robbery

Prior to closing, two men entered American Food Store, a convenience store associated with a gas station, located in Orangevale. One of the men jumped over the counter, pointed a gun at the store owner, and directed him to lie down. The armed man, who carried a sawed-off shotgun, then broke the phone and directed the owner to open the cash register. Once he did, the armed man took all the money, placed it in his pockets, left the store, and, as he was leaving, broke the phone of a customer who had entered the store during the robbery. The robber was wearing a dark blue hooded sweatshirt, a baseball cap, blue bandana covering his face, and gloves; and the other man wore a black hooded sweatshirt and had a covered face.

Following the robbery, the owner of the store asked police to place a one dollar bill laced with a tracking device, secured in a rubber-banded stack of bills, in the cash drawer so that police could track the cash if another robbery occurred.

### September 8 Robbery [Fn. Omitted]

Prior to closing, two men entered American Food Store (the same location as the August 28 robbery) and approached the counter where the cash register was located. The men were wearing blue clothing, their faces were covered, and one of them had a gun. The one with the gun came around the counter, directed the store employee to lie down on the ground, took cash from the register, and both men left. The store owner, who was also present for this robbery, testified that the two men who robbed the store on September 8 were the same men who robbed the store on August 28: They wore the same clothing, were the same height, and the robbery was similar. In both instances, the taller man had the gun and wore gloves.

Among the cash taken in this robbery was the cash containing the police tracking device that had previously been placed in the cash register. Once the device was removed from the cash register, police were automatically notified and began to track its location. Police tracked the device to a location in Sacramento, and then pursued and captured the suspects, including "a black male in a blue-hooded

3

sweatshirt and black jeans" with a black "doo-rag" and black shoes – defendant, who had the cash with the tracking device and a single black glove on his person. Police escorted the store owner to the location where he was able to identify defendant as the armed robber based on his height, build, "structure," skin color, and clothing.

### Defense Evidence

Defendant's employer testified that defendant was at work on August 18, at a business located just west of Lodi. Defendant worked there full time, as a supervisor; within his job duties, he had daily access to cash. On August 18, defendant worked from 8:30 a.m. until 1:00 p.m. Defendant's cousin (and the cousin's friend) testified that defendant attended a funeral for a relative on the afternoon of August 18 in Stockton. Following the funeral service, defendant and his family ate at a restaurant in Stockton and then gathered at a park, where they remained until after 9:00 p.m. Defendant's mother testified that defendant did not attend the service because he was working. She added, however, that defendant joined the family at the restaurant at about 3:00 p.m. and joined the family at the park sometime after 5:30 p.m., where he remained until between 9:30 and 9:45 p.m. He then returned to his mother's house in Stockton.

### Retrial Evidence

Susan Fattah described that she heard a gunshot coming from the direction where the armed robber was; that when she looked up, there was blood on the floor where her husband had been before; that when she next saw her husband, his arm was hanging and dripping blood; the wound was "an open bloody mess"; her husband was treated at the hospital that night and had followup treatments thereafter. A store employee present at the time of the robbery saw the robber point a gun at Susan's head; and then heard a shot, saw drops of blood on the floor, and then saw that Abdulla was bleeding profusely. Abdulla's medical records from the night of the robbery were also presented, including that he suffered "a large soft tissue" injury to his right forearm and wrist, with remnants of the shotgun shot left in the arm.

The owner of the convenience store involved in the August 28 and September 8 robberies also recounted those events, as well as his identification of defendant as the armed robber. A patrol officer whose dashboard tracker system alerted to the activation of the tracking device on September 8, recounted seeing a man in dark clothing and a blue hooded sweatshirt leave the convenience store carrying a shotgun and blue duffel bag. And the officer who caught the fleeing defendant that night, testified he found a tracking device, a black glove, a cell phone, and the defendant's wallet on his person. Defendant was wearing a blue hooded sweatshirt and black jeans when he was arrested following the September 8 robbery.

Defendant presented evidence that he does not have tattoos on his wrists.

(People v. White, slip op. at 2-6.)

4

IV.  <u>Standards for a Writ of Habeas Corpus</u>

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  <u>See</u> <u>Wilson v. Corcoran</u>, 562 U.S. 1, 5 (2010); <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. <u>Thompson v. Runnels</u>, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing <u>Greene v. Fisher</u>, 132 S. Ct. 38, 44-45 (2011)); <u>Stanley v. Cullen</u>, 633 F.3d 852, 859 (9th Cir. 2011) (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000)).  Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." <u>Stanley</u>, 633 F.3d at 859 (quoting <u>Maxwell v. Roe</u>, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." <u>Marshall v. Rodgers</u>, 569 U.S. 58, 64 (2013) (citing <u>Parker v. Matthews</u>, 132 S. Ct. 2148, 2155 (2012) (per curiam)).  Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as

correct." Id. Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. Carey v. Musladin, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[3] Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams v. Taylor, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. at 411. See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its 'independent review of the legal question,' is left with a '"firm conviction"' that the state court was '"erroneous"'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." Richter, 562 U.S. at 103.

---

[3] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 568 U.S. 289, (2013) (citing Richter, 562 U.S. at 98. If a state court fails to adjudicate a component of the petitioner's federal claim, the component is reviewed de novo in federal court. Wiggins v. Smith, 539 U.S. 510, 534 (2003).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. Where no

reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98. This court "must determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. at 101. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006).

V. Petitioner's Claims

A. *Trial Court Erred by Admitting Evidence of Uncharged Robberies*

First, petitioner claims that the trial court erred by admitting evidence of uncharged robberies because they were not distinctive enough to prove identity. (ECF No. 1 at 6-7.) Respondent maintains petitioner cannot show a violation of a right clearly established by the Supreme Court, thereby precluding relief, because the Supreme Court has never ruled that the admission of irrelevant or overtly prejudicial evidence is a due process violation. (ECF No. 12 at 18-21.)

The last reasoned rejection of petitioner's first claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal. The state court addressed this claim as follows:

**Evidence of Uncharged Robberies**

Defendant challenges the trial court's ruling permitting the introduction of evidence of the August 25, August 28, and September 8 robberies ("the uncharged robberies") to establish that he was the perpetrator of not only those robberies but the August 18 robbery (the charged offense) as well. Specifically, he contends the fact that in each robbery two men entered a business prior to closing, with the gunman wearing a blue hooded sweatshirt, dark bandana, cap and gloves, is not sufficiently distinctive to support admission of that evidence to prove identity. He also contends the evidence was unduly prejudicial and time-consuming. We are not persuaded.

Prior to trial, defendant moved in limine, pursuant to Evidence Code section 352 and 1101, [fn. omitted] to exclude evidence of the uncharged robberies. The People argued the evidence was relevant to prove identity and common plan or scheme because video footage showed defendant wore jeans, a bandana and the same blue sweatshirt in each of the robberies; he wore gloves with a spider web design; he carried a shotgun, if a gun was used; phones were always destroyed; the robberies were between 9:30 and 11:30 p.m.; and the same codefendant was present. After viewing video footage of the robberies, the trial court permitted evidence of the uncharged robberies, reasoning that the charged and uncharged robberies involved the use of a firearm, and in each of the robberies, "the primary armed defendant wore a blue hooded sweatshirt, dark pants, jeans, and a mask over his face while the robber who was not armed is smaller in physical stature. He wore a black sweatshirt with the hood up so his face was covered as well. [¶] In the – both the Yolo and Sacramento robberies the robbers took money from the cash register itself. They also took some merchandise, but the critical thing is taking the money out of the cash register." The trial court also emphasized that the August 28 and September 8 robberies involved the same store, and that the pattern of those robberies is "remarkably similar" to the August 18 robbery, and the August 25 robbery involved the same clothing and was "extremely similar" to the August 18, August 28, and September 8 robberies.

Evidence of a person's character, including uncharged acts of misconduct, is inadmissible to prove the conduct of that person on a specific occasion. (§ 1101, subd. (a).) However, such evidence is admissible to prove some material fact other than the person's character, such as identity. (§ 1101, subd. (b); *People v. Ewoldt* (1994) 7 Cal.4th 80, 393.) "'Evidence of *identity* is admissible where it is conceded or assumed that the charged offense was committed by someone, in order to prove that the defendant was the perpetrator.' [citation.] The admissibility of other crimes evidence for this purpose 'turns on proof that the [incidents] share *sufficient distinctive common features* to raise an inference of identity.' [Citation.] We have often commented that '"[t]he pattern and characteristics of the crimes must be so unusual and distinctive as to be like a signature."'" (*People v. Chism* (2014) 58 Cal.4th 1266, 1306.) However, it is not necessary to prove that the charged and uncharged offenses are "identical in every detail." (*People v. Renchie* (1963) 217 Cal.App.2d 560, 563; accord, *People v. Perez* (1967) 65 Cal.2d 615,

9

619.)

Even if evidence of the uncharged acts is admissible under section 1101, it may still be excluded pursuant to section 352 "if its probative value is substantially outweighed by the probability that its admission will require undue time consumption, will confuse or mislead the jury, or poses a substantial risk of undue prejudice." (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 406-407.) In this context, the word "prejudice" is used in the sense of ""'of 'prejudging' a person or cause on the basis of extraneous factors.""" (*People v. Harris* (1998) 60 Cal.App.4th 727, 737.) The term does not connote "the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence. '[A]ll evidence which tends to prove guilt is prejudicial or damaging to the defendant's case. The stronger the evidence, the more it is "prejudicial." The "prejudice" referred to in . . . section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has every little effect on the issues. In applying section 352, "prejudicial" is not synonymous with "damaging.""" (*People v. Harris* (1988) 46 Cal.3d 612, 638.) In deciding whether evidence should be excluded pursuant to this section, ""[t]he court must consider "'the relationship between the evidence and the relevant inferences to be drawn from it, whether the evidence is relative to the main or only a collateral issue, and the necessity of the evidence to the proponent's case as well as the reasons recited in section 352 for exclusion.""" (*People v. Houston* (2005) 130 Cal.App.4th 279, 304.)

We review the trial court's ruling admitting the evidence under an abuse of discretion standard (*People v. Hillhouse* (2002) 27 Cal.4th 469, 496), and reverse only if the trial court's ruling was "'arbitrary, capricious or patently absurd'" and caused a "'manifest miscarriage of justice.'" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124.)

The trial court did not abuse its discretion in concluding evidence of the uncharged robberies was admissible to prove identity pursuant to section 1101, subdivision (b). We do not agree with defendant that the common elements of the crimes are so generic as to be indistinct. Rather, there were a number of distinctive similarities between the charged and uncharged crimes. There were always two perpetrators involved; the perpetrators wore the same clothing (masked faces, dark jeans, dark hooded sweatshirts, and gloves, with the armed perpetrator always wearing a bandana on his face as well) in each robbery; the same perpetrator (the taller or larger one) always carried the gun; the same or similar gun (sawed-off shotgun) was used in each of the robberies; the robberies were always committed at approximately the same time of night (prior to closing); the robberies were all in the Sacramento area (Orangevale, Sacramento, and West Sacramento); the robbers always took cash directly from the cash register; and all the robberies were committed over the span of three weeks. Additionally, though there were some factual differences, in light of the distinctive shared features between the charged August 18 robbery and the uncharged August 25, August 28, and September 8 robberies, evidence of the circumstances surrounding the uncharged robberies supports the reasonable inference that the

individual who committed those robberies also committed the August 18 robbery. Therefore, we conclude evidence related to the uncharged robberies was relevant to the issue of identity with regard to the August 18 robbery.

Nor did the trial court err in finding the evidence admissible under section 352. Identity of the perpetrator was the principal issue at trial. None of the eyewitnesses were able to identify the perpetrators beyond a description of their size and clothing, which is all that the video footage from the August 18 robbery portrayed as well. There was no DNA, blood, or hair evidence from the robbery, and there was no evidence that anyone had been found spending the money stolen from the store that night or admitting involvement in the robbery. There were, however, these three other robberies that were committed soon after the August 18 robbery in the same general geographic area, and that involved substantially similar facts: same time of night, same number of perpetrators; same distinctive clothing on perpetrators; same type of gun used; same method of stealing cash from the register. Nor was the evidence of the uncharged robberies any more inflammatory than the evidence concerning the charged offense, which is the only robbery in which the gun was actually fired and a victim injured.

Since we find there was no error in admitting evidence of the uncharged robberies, we do not reach defendant's contentions that the erroneous admission of this evidence was prejudicial and violated his due process rights. (See *People v. Kraft* (2000) 23 Cal.4th 978, 1035 [application f the ordinary rules of evidence generally does not impermissibly infringe on a defendant's constitutional rights].)

(*People v. White*, slip op. at 7-11.)

*Analysis*

California Evidence Code § 1101(a) prohibits the admission of "evidence of a person's character or a trait of his or her character ... when offered to prove his or her conduct on a specified occasion." Yet, California Evidence Code § 1101(b) permits the admission of evidence "that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident..."[4]

---

[4] Federal Rule of Evidence 404 is the federal counterpart to California's evidentiary statute. It generally prohibits the introduction of extrinsic acts that might adversely affect one's character, unless that evidence bears upon a relevant issue in the case, such as identity. See, e.g., United States v. Quinn, 18 F.3d 1461, 1465-1466 (9th Cir. 1994) (addressing claim of insufficiency of identity evidence re bank robbery convictions [takeover robberies involving suspect of Quinn's approximate size and dress brandishing a weapon, each close in time and location, and committed by same person, with similar weapon).

In this first ground for relief, petitioner makes no mention his constitutional rights were violated. (ECF No. 1 at 6-7.) Rather, it appears his claim arises solely on state law grounds. However, this court may not review whether evidence was incorrectly admitted pursuant to state law, because "federal habeas corpus relief does not lie for errors of state law.'" Estelle, 502 U.S. at 67; see also Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus"). On habeas review, the court may only decide whether petitioner's conviction violated the Constitution, laws, or treaties of the United States. Id. at 68; 28 U.S.C. § 2241(c).

Assuming petitioner's claim asserts a violation of his due process rights by way of the admission of the uncharged robberies evidence, whether a petitioner's "due process rights were violated by the admission of evidence....is [usually] no part of a federal court's habeas review of a state conviction." Rhoades v. Henry, 638 F.3d 1027, 1034 n.5 (9th Cir. 2011) ("evidentiary rulings based on state law cannot form an independent basis for habeas relief"). "[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules." Marshall v. Lonberger, 459 U.S. 422, 438 n.6 (1983). Nevertheless, the erroneous admission of evidence at trial may violate due process if "the evidence so fatally infected the proceedings as to render them fundamentally unfair." Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991); accord Gonzalez v. Knowles, 515 F.3d 1006, 1011 (9th Cir. 2008).

Moreover, "[t]he Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process." Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009). Indeed, the Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." Id. (citation omitted). The due process inquiry in federal habeas review is whether the admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair. Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir. 1995). The admission of evidence violates due process only if there are no permissible inferences that the jury may draw from the

12

1    evidence.  See Jammal, 926 F.2d at 920.

2         Here, nothing in the record suggests that the state appellate court's ruling was "arbitrary"

3    or "so prejudicial" so as to render the underlying trial "fundamentally unfair."  Walters, 45 F.3d at

4    1357.  Identity is a permissible inference that the jury may draw from the evidence of prior

5    uncharged robbery evidence.  "Evidence introduced by the prosecution will often raise more than

6    one inference, some permissible, some not; [courts] must rely on the jury to sort them out in light

7    of the court's instructions.  Only if there are no permissible inferences the jury may draw from the

8    evidence can its admission violate due process."  Jammal, 926 F.2d at 920 (footnote omitted).  In

9    this case, the evidence of the uncharged robberies was necessary to prove identity.

10        The jury could permissibly draw the inference that petitioner was the robber carrying the

11   weapon during the August 18 robbery at Bryte Way Market based on evidence that the

12   perpetrators, and particularly the gunman in the uncharged robberies, wore the same clothing and

13   facial coverings, the gunman was the taller of the two suspects, and the perpetrators followed the

14   same pattern in each robbery (arriving near store's closing time, circumventing the counter,

15   directing clerk to lie down, taking money directly from the cash register).  (See generally, LD 5 at

16   238-80 & LD 6 281-329.)

17        Further, the trial court instructed the jury that the uncharged robbery evidence could only

18   be considered for the limited purpose of determining identity.  (LD 1 at 243-44; LD 6 at 561-62.)

19   The undersigned has no reason to doubt that the jury followed the limiting instructions given to

20   them.  See Weeks v. Angelone, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its

21   instructions").

22        For the foregoing reasons, the undersigned finds that the admission of the uncharged

23   robbery evidence did not render the trial unfair, and thus did not violate due process.  The state

24   court's ruling was not "so lacking in justification that there was error well understood and

25   comprehended in existing law beyond any possibility of fairminded disagreement."  Richter, 562

26   U.S. at 103.  The state appellate court's determination is not contrary to, nor does it involve an

27   unreasonable application of, Supreme Court precedent.  28 U.S.C. § 2254.  Thus, petitioner is not

28   entitled to habeas relief on this claim.

13

B. *Sufficiency of the Evidence*

Petitioner also claims there was insufficient evidence of identity to support the jury's verdicts. (ECF No. 1 at 8-9.) Respondent contends the state court's denial was reasonable, and thus, federal habeas relief is precluded. (ECF No. 12 at 22-24.)

The last reasoned rejection of petitioner's claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal. The state court addressed this claim as follows:

> Defendant contends there was insufficient evidence of identity to support the jury's verdicts. This argument is essentially a reiteration of defendant's argument regarding the admission of the evidence of the uncharged acts: he asserts the details in all the robberies are "common, not unusual or distinctive" and thus do not provide substantial evidence that defendant committed the charged act. We are not persuaded.
>
> "On appeal, the test of legal sufficiency is whether there is substantial evidence, i.e., evidence from which a reasonable trier of fact could conclude that the prosecution sustained its burden of proof beyond reasonable doubt. [Citations.] Evidence meeting this standard satisfies constitutional due process and reliability concerns. [Citations.] [¶] While the appellate court must determine that the supporting evidence is reasonable, inherently credible, and of solid value, the court must review the evidence in the light most favorable to the [judgment], and must presume every fact the jury could reasonably have deduced from the evidence. [Citations.] Issues of witness credibility are for the jury." (*People v. Boyer* (2006) 38 Cal.4th 412, 479-480.) For us to set aside the jury's finding that defendant was guilty of the August 18 robbery, "the evidence of identity must be so weak as to constitute practically no evidence at all." (*People v. Lindsay* (1964) 227 Cal.App.2d 482, 493.) The defendant's identity may be proved by "peculiarities of size, appearance, similarity of voice, features or clothing." (*Id.* at p. 494.) "Further, if the record contains substantial evidence from which a reasonable trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt "the possibility that the trier of fact might reasonably have reached a different conclusion does not warrant reversal."" (*People v. Sullivan* (2007) 151 Cal.App.4th 524, 564.)
>
> Here, the evidence, including the video footage viewed by the jury and testimony by the victims of the charged and uncharged robberies, showed that at approximately the same time of night (just prior to

closing) over the course of less than a month, two men (of the same build and wearing very similar distinctive clothing) entered small retail establishments (a small grocery store and different convenience stores) in the greater Sacramento area, the same one man carried the same type of gun (a sawed-off shotgun), he demanded the store employee open the register, he took cash directly from the register, and the men left. Evidence also showed that defendant was found shortly after the September 8 robbery in possession of a tracking device stolen during that robbery, was wearing the same clothing as the man who perpetrated the robbery, and was the same build as the man who perpetrated the robbery. This is substantial evidence that defendant was the perpetrator who committed the August 18 robbery as well.

(People v. White, slip op. at 11-12.)

### *Applicable Legal Standards*

The Due Process Clause of the Fourteenth Amendment protects a criminal defendant from conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). Thus, one who alleges that the evidence introduced at trial was insufficient to support the jury's findings states a cognizable federal habeas claim. Herrera v. Collins, 506 U.S. 390, 401-02 (1993). Nevertheless, the petitioner "faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). On direct review, a state court must determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Federal habeas relief is available only if the state court determination that the evidence was sufficient to support a conviction was an "objectively unreasonable" application of Jackson. Juan H., 408 F.3d at 1275 n.13.

Habeas claims based upon alleged insufficient evidence therefore "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." Coleman v. Johnson, 566 U.S. 650, 651 (2012) (per curiam). As noted by the Supreme Court:

First, on direct appeal, "it is the responsibility of the jury−not the court−to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact

15

could have agreed with the jury." And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'"

Coleman v. Johnson, at 651 (citations omitted).

The Jackson standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Jackson, 443 U.S. at 324 n.16. In performing a Jackson analysis, a jury's credibility determinations are "entitled to near-total deference." Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004). When the factual record supports conflicting inferences, the federal court must presume that the trier of fact resolved the conflicts in favor of the prosecution and must defer to that resolution. Jackson, 443 U.S. at 326.

Under Jackson, this Court's role is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain conviction. Schlup v. Delo, 513 U.S. 298, 330 (1995). The United States Supreme Court has recently even further limited a federal court's scope of review under Jackson, holding that "a reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." Cavazos v. Smith, 565 U.S. 1 (2011) (per curiam). Jackson "makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." Id. at 2. Under Cavazos, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" Id. at 2 (quoting Renico v. Lett, 559 U.S. 766, 773 (2010)).

*Analysis*

On this record, there is sufficient evidence of identity to support the jury's verdicts. More particularly, viewing the evidence in the light most favorable to the judgment, the undersigned finds the state court's determination is reasonable and not contrary to, nor involved an unreasonable application of, Supreme Court precedent.

A review of the record reveals video evidence and trial testimony of numerous witnesses going to the issue of identity from which a jury could readily conclude that the same individuals

16

committed the robberies in question.  (See LD 4-6.)  That significant evidence included same or similar clothing and disguises worn by the robbers, a same or similar weapon used by one of the two suspects in each instance, and the same or similar tactics or style employed by the individuals while robbing the various convenience stores.  It is the jury's responsibility to decide what conclusions are to be drawn from this evidence.  Coleman v. Johnson, 566 U.S. at 651.  That determination is "entitled to near-total deference" from this court.  Bruce v. Terhune, 376 F.3d at 957.

The Third District's holding, citing to state law regarding the sufficiency of the identity evidence, is not objectively unreasonable.  Cavazos v. Smith, 565 U.S. at 2; see also Juan H., 408 F.3d at 1275 n.13.  The undersigned agrees that the evidence deduced at trial was not "so weak as to constitute practically no evidence at all" and involved evidence concerning "peculiarities of size, appearance, …, features or clothing."  People v. Lindsay, 227 Cal. App. 2d 482, 493-94 (1964).  Even if the evidence can be construed as petitioner asserts – that "there is nothing particularly distinctive about the facts" – conflicting inferences do not entitle petitioner to habeas relief; conflicting inferences are resolved in favor of the prosecution.  Jackson, 443 U.S. at 326.

This record establishes that a rational trier of fact could have found petitioner was in fact the armed robbery in the August 18 robbery.  Jackson, 443 U.S. at 319.  Nothing about the verdicts in this regard is objectively unreasonable.  Juan H., 408 F.3d at 1275 n.13.

Petitioner has not met his burden of establishing that the state court's adjudication of his claim was contrary to, or involved an unreasonable application of, Supreme Court precedent.  28 U.S.C. § 2254.  As a result, this claim should be denied.

C.  Improper Lay Opinion

Next, petitioner avers that Detective Biondi's testimony concerning the weapon used in the robberies, specifically that the same weapon was used, was improper lay opinion in violation of his constitutional rights.  (ECF No. 1 at 10.)  Respondent disagrees and contends the state appellate court's determination cannot be unreasonable where, as noted in ground one, the "high court 'has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation,'" thereby precluding habeas relief.  (ECF No. 12 at 24-25.)

Again, the last reasoned rejection of petitioner's claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal. The state court addressed this claim as follows:

> Defendant contends that the Sacramento County Sheriff's Detective Paul Biondi's testimony that the surveillance videos depicted the same or similar shotgun was improper lay testimony. He argues that because the detective had never seen the actual shotgun involved and did not relay anything specific to this gun as opposed to other sawed-off shotguns, his testimony was not helpful to the jurors. We disagree.
>
> "'"Lay opinion testimony is admissible where no particular scientific knowledge is required, or as to 'a matter of practical necessity when the matters . . . observed are too complex or too subtle to enable [the witness] accurately to convey them to court or jury in any other manner.'"'" (*People v. Chapple* (2006) 138 Cal.App.4th 540, 547.) The opinion must be relationally based on the witness's perception and helpful to a clear understanding of the witness's testimony. ([Cal. Evid. Code,] § 800.) By its nature, "the subject matter of lay opinion is 'one of such common knowledge that men of ordinary education could reach a conclusion as intelligently as the witness.'" (*Chapple*, at p. 547.) For instance, lay opinion testimony that someone is intoxicated, angry, or driving a motor vehicle at an excessive speed, may be a more convenient or accurate means to convey that information to a jury than providing a detailed recitation of the underlying facts. (*Ibid.*) We review the trial court's evidentiary ruling for an abuse of discretion. (*People v. Cowan* (2010) 50 Cal.4th 401, 462.)
>
> Here, over defendant's objection, the trial court permitted Detective Biondi to provide the following lay opinion testimony. Biondi testified that he reviewed the video from the September 8 robbery, and that in the video he saw an individual with a gun, which he described as a shotgun with "a full stock, a brown fore grip, like a wood fore grip, and it appeared that the front barrel had been sawed off." Biondi further testified that the gun he saw carried in the video from the August 28 robbery appeared to him to be the same shotgun, and that the video from the August 25 robbery appeared to show "the same individual carrying the same shotgun." Finally, he testified the shotgun appearing in the footage from the August 18 robbery appeared to him to be similar to the shotgun in the videos from the August 25, August 28, and September 8 robberies. He came to that opinion because it appeared to him that the gun used in the August 18 robbery and other robberies had the same size barrel, had the same length barrel, and were the same type of shotgun. The gun itself was never recovered.
>
> A lay person is permitted to provide opinion testimony identifying a weapon. (*People v. Hines* (1997) 15 Cal.4th 997, 1058.) Here, by describing the nuanced details of the shotgun he observed in the video of the September 8 robbery, Detective Biondi was able to highlight identifying features of the weapon that another lay person

readily could but may not observe.  Thus, Biondi's identification of the firearm in the September 8 robbery was proper lay opinion testimony.  Moreover, his subsequent testimony that it looked like the same gun was used in the August 18, August 25, and August 28 robberies based on his review of the video and photographs from those crimes, was properly permitted as lay opinion testimony.  (See *People v. Maglaya* (2003) 112 Cal.App.4th 1604, 1608-1609 [officer can properly provide lay opinion testimony that shoeprints from crime scene and the pattern on soles of the defendant's shows are similar].)  The basis and extent of Biondi's knowledge went to the weight of his testimony and was for the jury to decide.  (See *People v. Prince* (2007) 40 Cal.4th 1179, 1229; *People v. Medina* (1990) 51 Cal.3d 870, 887.)  The jury was so instructed.  Therefore, the trial court did not abuse its discretion in permitting Biondi to testify regarding this perception that the weapons used in each robbery were similar.

(People v. White, slip op. at 13-14.)

### *Applicable Standards & Analysis*

Habeas relief may be granted "only on the ground that [petitioner] is in custody in violation of the constitution or laws or treaties of the United States."  Wilson v. Corcoran, 562 U.S. at 5 (quoting 28 U.S.C. § 2254(a)).  As the Supreme Court has stated "'federal habeas corpus relief does not lie for errors of state law.'"  Swarthout v. Cooke, 562 U.S. 216, 220 (2011) (quoting Estelle v. McGuire, 502 U.S. at 67).  Again, "a state court's interpretation of state law ... binds a federal court sitting in habeas corpus."  Bradshaw, 546 U.S. at 76.  In addition, this court has "no authority to review alleged violations of a state's evidentiary rules in a federal habeas proceeding."  Windham v. Merkle, 163 F.3d 1092, 1103 (9th Cir. 1998).  The sole exception is if the violation was so egregious as to deny petitioner the fundamentally fair trial guaranteed by due process.  Henry v. Kernan, 197 F.3d 1021, 1031 (9th Cir. 1999).

Here, petitioner's challenge to the trial court's admission of Detective Biondi's opinion testimony concerning the weapon used in the robberies is based on state evidentiary rules.  The state appellate court determined the trial court did not abuse its discretion under California law when it allowed the opinion testimony to be admitted.  (LD 11 at 14.)  The state court's interpretation is binding on this Court.  Bradshaw, 546 U.S. at 76.

To the extent the admission of evidence implicates due process, the federal inquiry asks whether the evidence's admission was arbitrary or so prejudicial that it rendered the trial

fundamentally unfair. <u>Walters v. Maass</u>, 45 F.3d at 1357.

The undersigned has reviewed Detective Biondi's testimony. (LD 5 at 418-35.) He described the weapon as appearing "to have a full stock, a brown fore grip, like a wood fore grip, and it appeared that the front barrel had been sawed off." (LD 5 at 430.) He also testified it appeared the same weapon was used in the various robberies at issue. (LD 5 at 430-33.) The state court found the testimony was proper because "Detective Biondi was able to highlight identifying features of the weapon that another lay person readily could but may not observe" (LD 11 at 13) because such testimony is admissible where "as 'a matter of practical necessity when the matters … observed are too complex or too subtle to enable [the witness] accurately to convey them to court or jury in any other manner'" (LD 11 at 12).

Nothing in the due process clause requires a state to refrain from admitting relevant evidence. <u>Estelle</u>, 502 U.S. at 70. This evidence was plainly relevant and, hence, not arbitrary. Petitioner contends the admission of this testimony was prejudicial because "law enforcement testimony carries more weight than ordinary citizens because they are regarded as a criminal expert privy to special information" and that it is reasonably probable a more favorable outcome would have occurred absent admission of the testimony. (ECF No. 1 at 10.) However, as the state appellate court's opinion noted, Detective Biondi's testimony "went to the weight of his testimony and was for the jury to decide." (LD 11 at 14.) The jury was instructed regarding the assessment of witness credibility (LD 1 at 231-32 [Witnesses], 239 [Opinion Testimony of Lay Witnesses]; LD 5 at 556-58, 560) and there is no basis on this record from which it can be inferred the jury disregarded the instruction. <u>Weeks v. Angelone</u>, 528 U.S. at 234. Furthermore, other witnesses (Singh, Hothi, Sandu, Fattah, Karpekin) testified about the weapon as well, and the jury could have concluded from that testimony that the same gun was used in the various robberies. (<u>See</u> LD 5 at 240, 243, 250, 253-55, 261 [identifying gun described as same depicted in video played during testimony], 269-71, 274 [identifies petitioner as robber "carrying the gun"], 281, 296-302 [identifies numerous photographs from video surveillance during robbery depicting robber and gun], 322 ["saw a gun pointed to Sue's head, a long gun"] & 324 ["person with the gun was by Sue. He was holding the gun"].) The state appellate court's determination is

neither arbitrary nor prejudicial.  <u>Walters v. Maass</u>, 45 F.3d at 1457.

In sum, the Third District Court of Appeal's finding is not so egregious as to deny petitioner a fundamentally fair trial.  <u>Henry v. Kernan,</u> 179 F.3d at 1031.  Therefore, petitioner has failed to demonstrate the state court adjudication of this claim was contrary to, or an unreasonable application of, clearly established federal law when it concluded Detective Biondi's testimony was not erroneously admitted.  28 U.S.C. § 2254.  Accordingly, the undersigned recommends this claim be denied.

D.  <u>Cumulative Error</u>

Petitioner maintains that the combination of the aforementioned issues (grounds one through three) amount to prejudicial cumulative error entitling him to relief.  (ECF No. 1 at 11.)  Respondent argues the state court's determination that there was no cumulative error is reasonable and precludes habeas relief.

The Third District Court of Appeal's determination of this claim is as follows:

> Defendant contends the combined prejudice that resulted from the erroneous admission of the evidence of the uncharged crimes and Detective Biondi's lay opinion requires reversal.  Having found no error, we conclude there was no cumulative prejudice meriting reversal.  (E.g., *People v. Dement* (2011) 53 Cal.4th 1, 58; *People v. McWhorter* (2009) 47 Cal.4th 318, 377.)

(<u>People v. White</u>, <u>slip op</u>. at 14.)

*Applicable Standards & Analysis*

The Ninth Circuit has concluded that under clearly established United States Supreme Court precedent the combined effect of multiple trial errors may give rise to a due process violation if it renders a trial fundamentally unfair, even where each error considered individually would not require reversal.  <u>Parle v. Runnels</u>, 505 F.3d 922, 927 (9th. Cir. 2007) (citing <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974), and <u>Chambers v. Mississippi</u>, 410 U.S. 284, 290 (1973)).  "The fundamental question in determining whether the combined effect of trial errors violated a defendant's due process rights is whether the errors rendered the criminal defense 'far less persuasive,' <u>Chambers</u>, 410 U.S. at 294, and thereby had a 'substantial and injurious effect or influence' on the jury's verdict."  <u>Parle</u>, 505 F.3d at 927 (quoting <u>Brecht v. Abrahamson</u>, 507 U.S.

1    619, 637 (1993)).  See also Hein v. Sullivan, 601 F.3d 897, 916 (9th Cir. 2010) (same).

2         The undersigned has addressed each of petitioner's claims and concluded that no error of

3    constitutional magnitude occurred.  The undersigned also concludes that the alleged errors

4    pertaining to the uncharged robberies and Detective Biondi's testimony, even when considered

5    together, did not render petitioner's defense "far less persuasive," nor did they have a "substantial

6    and injurious effect or influence on the jury's verdict."  Chambers, 410 U.S. at 294; Parle, 505

7    F.3d at 927.  Accordingly, petitioner is not entitled to relief on his claim of cumulative error and

8    the claim should be denied.

9         E.  Ineffective Assistance of Appellate Counsel

10        Lastly, petitioner complains that appellate counsel provided ineffective assistance of

11   counsel in violation of his constitutional rights, entitling him to relief in these proceedings.  (ECF

12   No. 1 at 12-13.)  Respondent maintains that this claim is unexhausted and must be denied because

13   it does not raise a colorable federal claim.  (ECF No. 12 at 27-29.)

14        Petitioner filed a state habeas petition filed with the Third Appellate District on June 25,

15   2012.  (LD 14.)  The petition was denied with citations to In re Steele, 32 Cal.4th 682, 692

16   (2004), and In re Hillery, 202 Cal. App. 2d 293 (1962), on July 6, 2012.  (LD 15.)  A review of

17   the petition reveals the claim to be unexhausted as alleged by respondent.

18        Pursuant to 28 U.S.C. § 2254(b)(2),[5] the court may deny an unexhausted claim on the

19   merits "when it is perfectly clear that the [petitioner] does not raise even a colorable federal

20   claim."  Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005) (adopting the standard set forth in

21   Granberry v. Greer, 481 U.S. 129, 135 (1987)).

22                          *Applicable Standards & Analysis*

23        A habeas claim alleging appellate counsel was ineffective is evaluated under Strickland v.

24   Washington, 466 U.S. 668 (1984).  See Williams v. Taylor, 529 U.S. at 390-91.  To establish

25   ineffective assistance of counsel, petitioner must prove:  (1) counsel's representation fell below an

26

27   [5] "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the
     failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C.
28   § 2254(b)(2).

                                  22

objective standard of reasonableness under prevailing professional norms, and (2) there is a

reasonable probability that, but for counsel's errors, the result of the proceeding would have been

different.  <u>Strickland</u>, 466 U.S. at 687-94, 697.  As the high court has observed, appellate counsel

performs properly and competently when he or she exercises discretion and presents only the

strongest claims instead of every conceivable claim.  <u>Jones v. Barnes</u>, 463 U.S. 745, 752 (1983);

<u>Smith v. Murray</u>, 477 U.S. 527, 536 (1986).  "In many instances, appellate counsel will fail to

raise an issue because she foresees little or no likelihood of success on that issue; indeed, the

weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate

advocacy."  <u>Miller v. Keeney</u>, 882 F.2d 1428, 1434 (9th Cir. 1989).  The relevant inquiry is not

what counsel could have done; rather, it is whether the choices made by counsel were reasonable.

<u>Babbitt v. Calderon</u>, 151 F.3d 1170, 1173 (9th Cir. 1998).  Even if petitioner could demonstrate

his appellate attorney acted unreasonably, he must still show prejudice.  <u>Smith v. Robbins</u>, 528

U.S. 259, 285-286 (2000).

   Here, petitioner specifically argues appellate counsel was ineffective for failing to

"discover" the "non-frivolous" claim that the trial court improperly denied the

<u>Trombetta/Youngblood</u>[6] motion defense counsel asserted during trial because it "was stronger

than those [other claims] presented" on direct appeal.  (ECF No. 1 at 12-13.)

   In <u>California v. Trombetta</u>, the United States Supreme Court held that the government

violates a defendant's right to due process if it destroys evidence that possessed "exculpatory

value that was apparent before the evidence was destroyed [that is] of such a nature that the

defendant would be unable to obtain comparable evidence by other reasonably available means."

<u>Trombetta</u>, 467 U.S. at 489.

   In order to show a constitutional violation, a criminal defendant must demonstrate that the

police acted in bad faith in failing to preserve the potentially useful evidence.  <u>Youngblood</u>, 488

U.S. at 58.  "The presence or absence of bad faith turns on the government's knowledge of the

apparent exculpatory value of the evidence at the time it was lost or destroyed."  <u>United States v.</u>

---

[6] <u>California v. Trombetta</u>, 467 U.S. 479 (1984); <u>Arizona v. Youngblood</u>, 488 U.S. 51 (1988).

Cooper, 983 F.2d 928, 931 (9th Cir. 1993) (citing Youngblood, 488 U.S. at 56-57).  The fact that evidence was "potentially exculpatory" is not a sufficient showing of prejudice.  Grisby v. Blodgett, 130 F.3d 365, 371 (9th Cir. 1997) (citing Youngblood, 488 U.S. at 57).  "Potentially exculpatory" evidence is evidence "of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant."  Youngblood, 488 U.S. at 57.

On April 8, 2013, trial counsel filed a "Motion for Sanctions Pursuant to *Trombetta/Youngblood*," asserting all charges against petitioner should be dismissed, or alternatively, that all evidence regarding the content of the video from Bryte Way Market should be excluded at trial because "law enforcement has willfully destroyed material, exculpatory evidence."  (LD 1 at 179-185, 189-190.)  The trial court heard argument by the parties, as well as the testimony of West Sacramento Police Officer Donald Schlie, prosecutor Robin Johnson, and Kristina Hunter, senior clerk with the West Sacramento Police Department.  (LD 4 at 74-81, 98-226.)  After extensive proceedings, the trial court ruled:

> In my view, since Detective Schlie made reference in his original police reports to the data he obtained when he reviewed angles two and three, and he testified at the preliminary hearing about his observations, the fact that apparently either angles two and three were never memorialized and a thumb drive or CD of those angles was never preserved by West Sacramento PD, or for reasons as yet unclear, Sacramento PD had that data at one point but has lost it, misplaced it, deleted it, who knows.  But the fact that those angles were no longer available and, therefore, could not be evidence in this case should have been disclosed definitively long before that became somewhat clear.
>
> And so I do find that there has been a violation of the disclosure responsibilities of the prosecution in this particular matter.
>
> I accept Ms. Johnson's representation, which is consistent with everything in the record, that Ms. Johnson did not realize that no one had this data available, and so I accept the representation that there was nothing intentional in the failure to preserve or to maintain this information.
>
> As I said yesterday, it is a matter of negligence, perhaps a matter of gross negligence, but without an intentional failure to disclose, which I do not find, I would not dismiss the case under Penal Code Section 1054.5(b).
>
> Having said that, we haven't finished the evidentiary hearing on the

24

issues related to this, but I do not intend to keep this jury waiting for hours or days while we bring in more witnesses to testify about this. So my intention is to bring the jury in, to give the two of you a chance to make an opening statement. However, the photos which have been marked 93 through 120 cannot be shown to the jury until I'm satisfied that there is a sufficient foundation for the admissibility of any or all of those particular photographs. So those photographs can't be used in opening statement, and the photographs can't be shown during Ms. Fattah's testimony unless I'm convinced that she is able to provide the necessary authenticity for those exhibits.

(LD 4 at 221-22; see also LD 1 at 202, 210-11 & LD 2 at 256 & LD 4 at 225-26 ["Officer Schlie will not be permitted to talk about how he obtained the photographs until we sort through what happened with the evidence in this case" & "Officer Schlie will not be permitted to talk about them until after we've heard from Ms. Lugo"].)

Following the above, on April 12, 2013, outside the presence of the jury, Deborah Lugo, retired crime scene investigator for the West Sacramento Police Department, testified on the issues that were the subject of the defense motion. (LD 5 at 347-77.) On April 15, 2013, the trial court entertained additional argument (LD 5 at 441-47) before stating:

After a week's worth of testimony, there are many things about the collection of evidence in this case that remain unclear, but we do know this much, a copy of the Bryte Way Market's surveillance tape was downloaded onto a flash drive, either on August 18th or August 19th of 2008. That flash drive was given to Detective Schlie the same day that it was downloaded. That flash drive was never booked into evidence in this case. A CD was booked into evidence as Item No. 16, and that CD has only one camera angle, what we've been referring to as camera angle one on the CD itself. That was booked in two months later on October 21st, 2008.

Neither did Detective Schlie nor Ms. Lugo nor Ms. Hunter have any idea what happened to the flash drive itself. It is unclear what was on the flash drive. It is unclear whether the flash drive included camera angles two and three or whether Schlie saw those when he looked at the surveillance video on-site, but there is no evidence that I heard to suggest that there are more than three angles on the flash drive, if indeed there were three separate camera angles.

Anyone who heard this testimony would conclude that the way Schlie handled the flash drive was certainly negligent. I'll accept the word sloppy. I think it was, frankly, incompetent, but I cannot say that the evidence shows that Schlie acted with gross negligence, that is any kind of intentionality, any kind of recklessness in terms of the way that he dealt with this evidence. Therefore, I do not find Schlie acted maliciously or in bad faith.

25

Furthermore, I do not find that that the lost surveillance footage was likely to be exculpatory. Indeed, if the still photos, which Ms. Fattah identified, are from those lost camera angles, then there is nothing exculpatory in that evidence.

I indicated last week that I did find a discovery violation in this case. I found, and continue to believe, that the defense should have been made aware of the missing surveillance footage months ago. While I accept Ms. Johnson's representation that she was as ignorant of the loss as [defense counsel] was, someone on the prosecution team should have been aware of that.

So I find that there was a failure to disclose the problem in a timely manner, but I cannot find that that failure was itself intentional.

Given the multiple failures in this case both by Schlie in particular, and the prosecution team in general, I would grant the defense request that Schlie be barred from testifying about what he saw on the missing surveillance footage. So Schlie would be prohibited from offering such testimony in the People's case in chief. However, were Schlie to be called by the defense in their case in chief and questioned about the lost evidence, then because I do not find any intentionality, I would permit Schlie to discuss what it was that was lost, and to the extent that he can possibly explain it, how this evidence was in fact lost.

(LD 4 at 447-49.)

Here, in light of the evidence presented and testimony given, even if the undersigned assumes the missing evidence was exculpatory, the superior court's ruling that bad faith was not shown on the part of law enforcement or the prosecution was a reasonable determination of the facts and consistent with the applicable clearly established United State Supreme Court precedent. 28 U.S.C. § 2254(d)(1) & (2); see Illinois v. Fisher, 540 U.S. 544, 548 (2004) (holding that the bad faith requirement applies to potentially exculpatory evidence even when the contested evidence "provides a defendant's only hope for exoneration and is essential to and determinative of the outcome of the case") (internal quotation marks omitted).

It necessarily follows that appellate counsel was not deficient for omitting this weak issue on appeal. Jones v. Barnes, 463 U.S. at 751-52. Rather, appellate counsel exercised her discretion and chose not to challenge the trial court's ruling on the defense motion. Id. at 752; Smith v. Murray, 477 U.S. at 536. The record reveals her choice to be a reasonable one. Babbitt v. Calderon, 1251 F.3d at 1153.

////

In sum, a review of petitioner's claim shows that it was not unreasonable for petitioner's appointed appellate counsel to conclude that such a claim would likely be found lacking in merit. Petitioner's appellate counsel chose to present only the claims which she believed presented a possibility of reversal by the appellate court. This is a strategic choice well within counsel's prerogative and, as such, petitioner has failed to establish that his counsel's performance fell below an objective standard of reasonableness. Strickland, 466 U.S. at 687-694. Therefore, the undersigned finds that petitioner has failed to present a colorable ineffective assistance of appellate counsel claim. Cassett v. Stewart, 406 F.3d at 624. Petitioner's fifth ground for relief should be denied.

VI. Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 30, 2019

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/whit0494.157

27